IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**RALPH WALTER BROWN,**
et al.,

    Plaintiffs,

vs.                             CASE NO. 5:10-cv-130/RS-GRJ

**HON. BOBBY HADDOCK, et al.,**

    Defendants.
_____/

## ORDER

    Before me are Defendant Brandon Stevenson's, Defendant Jonathan Rackard's, and Defendant Bobby Haddock's Motions for Summary Final Judgment (Docs. 25, 26, & 27), and Plaintiffs' Response in Opposition (Doc. 31).

### Standard of Review

    Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). In other words, the basic issue before the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (*citing Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## Background

I accept the facts in the light most favorable to Plaintiffs. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "All reasonable doubts about the facts should be resolved in favor of the non-movant." *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

On August 16, 2007, Defendant Brandon Stevenson ("Officer Stevenson") and Defendant Jonathan Rackard ("Officer Rackard"), both officers with the Washington County Sherriff's Office ("WCSO"), responded to a call at a home in Vernon, Florida. The call concerned a fight between two minors, cousins Courtland and Antonio. Plaintiff April Works ("Ms. Works"), the mother of one of the minors, returned to the home after being called by her family about the incident. Ms. Works "was trying to find

out from Officer Stevenson what was going on with her child when Officer Rackard turned to [Ms.] Works and chest bumped her, knocking her backwards about two feet, and ordered her into the house." (Doc. 19, p.4).

Ms. Works did not comply with this order.  Instead, she protested that she needed to find out what was going on with the altercation between the cousins.  Officer Rackard told her that he was going to take her to jail.  Ms. Works then "demonstratively put out her hands to be cuffed." (Doc. 19, p.5).  Instead of hand-cuffing Ms. Works, Officer Rackard attempted a leg sweep on her by kicking her ankles.  This leg sweep was, at first, unsuccessful.  With the help of Officer Stevenson, Officer Rackard did finally knock Ms. Works to the ground so that her face landed on a patch of oyster shells.  Ms. Works was then placed in the back of a patrol car.

Plaintiff Ralph Brown, ("Mr. Brown"), Ms. Works' father, was also called to the home because of the altercation between the minor cousins and the arrest of Ms. Works. Mr. Brown, after arriving at the home, asked Officer Rackard why he threw Ms. Works to the ground.  Officer Rackard ordered Mr. Brown to "close the patrol car door and get away from the car."  However, before Mr. Brown could respond, Officer Rackard "grabbed Mr. Brown's arm and tried to throw him down."  In this process, Officer Rackard slipped, fell and pulled Mr. Brown on top of him. (Doc. 19, p. 5).

Officer Rackard called for Officer Stevenson to shoot Mr. Brown with his Taser. Officer Stevenson then engaged his Taser and shot Mr. Brown at least twice, in the neck and lower back.

Ms. Works was charged with resisting arrest without violence, and Mr. Brown was charged with battery on a law enforcement officer and resisting arrest with violence. They were acquitted on these charges.

## Qualified Immunity

Qualified immunity is a shield against liability for government actors, prohibiting "civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "'allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . .'" *Scott v. Harris*, 127 S. Ct. 1769 n.2 (2007) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1986)).

Qualified immunity requires a three-step inquiry. First, the defendant public official must prove is that "'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson v. McMillan*, 939 F.2d 1479 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988)). Once the defendant public official has satisfied his burden, the burden shifts to the plaintiff and the second step is to answer the question whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [that Defendants'] conduct violated a

constitutional [or statutory] right?" *Hadley*, 526 F.3d at 1329 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If, and only if, the answer to the first question is "yes," the next question is "whether the right, be it constitutional or statutory, was clearly established." *Id.*  In *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the Supreme Court reaffirmed the established standard for qualified immunity, but held that courts are no longer required to conduct the analysis in the order articulated in *Saucier*, leaving the order of analysis of the two prongs to the sound discretion of the court.

The Eleventh Circuit has indicated that a government official can prove that he is acting within his discretionary authority by showing "'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Rich*, 841 F.2d at 1564 (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981 )).  The depositions of Ms. Works and Mr. Brown (Doc. 28), as well as the Plaintiffs' Complaint (Doc. 1) adequately demonstrate that the officers' actions in arresting, sweep-kicking, and tasing Plaintiffs were carried out during the performance of their normal job duties and were within the scope of the authority delegated to them by their employer.  The officers were on duty and responding to a police dispatch.  They arrived on the scene in uniform and in police vehicles.  Accordingly, I conclude that Defendants have satisfied their burden of demonstrating that the officers were acting "within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983).

Having found that Defendants were acting within their discretionary powers when they arrested Plaintiffs, "'the burden shifts to the plaintiff[s] to show that qualified immunity is not appropriate.'" *Galvez*, 552 F.3d at 1242 (quoting *Lee*, 284 F.3d at 1194). In this second step of the qualified immunity analysis, a court must determine whether the plaintiff has alleged a constitutional violation.

**Unlawful Arrest**

The Fourth Amendment protects individuals from unreasonable search and seizure. An arrest without probable cause clearly violates this Fourth Amendment right. *Durrithy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)).

The Eleventh Circuit has concluded that the standard for determining the existence of probable cause is the same under both Florida and federal law – whether "'a reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer.'" *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998) (quoting *United States v. Ulrich*, 580 F.2d 765, 769 (5th Cir. 1978)). A plaintiff bears the burden of demonstrating the absence of probable cause in order to succeed in their § 1983 claim. *Rankin*, 133 F.3d at 1436. Probable cause "constitutes an absolute bar to both state and § 1983 claims alleging false arrest . . ." *Id.* at 1435. "[O]fficers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." *Kingsland v. City of Miami*, 382 F. 3d 1220, 1232 (11th Cir. 2004) (citing *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999 )). Arguable probable cause exists if reasonable officers in the same circumstances and possessing the

same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiffs. *Id.* Qualified immunity does not apply, however, where a governmental official engages in conduct that violates clearly established statutory or constitutional rights. *Bashir v. Rockdale County*, 445 F.3d 1323, 1327 (11th Cir. 2006).

Viewed in the light most favorable to Plaintiffs, the facts support a conclusion that there was no probable cause for their arrest. Ms. Works was charged with violating FLA. STAT. § 843.02 for resisting an officer without violence. For a conviction for resisting an officer without violence under Section 843.02, the state must show that: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of the lawful duty. *Slydell v. State*, 792 So. 2d 667, 671 (Fla. 4th DCA 2001). In this case, the focus is on the second requirement as there is no question that the deputies were in the process of investigating a police dispatch, and thus, they were engaged in the lawful execution of a legal duty.

Ms. Works contends that she did not refuse an order of the sheriff's deputies and therefore there was no probable cause for her arrest (Doc. 31, p.5). The facts as presented by Plaintiffs cast some doubt on this version of events as Plaintiffs admit that Ms. Works refused Officer Rackard's order for her go into the house rather than remain outside near the ongoing investigation (Doc. 19, p.4). However, the lawfulness of an order that a person be sequestered inside while officers were on private property without warrant is in question. *See Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006) (noting that "an owner's simple inquiry as to why officers are present on his property" does not support a charge of obstructing justice under Florida law). Thus, in the light most favorable to

Plaintiffs, Ms. Works was within her rights to refuse to go inside the house and her arrest lacked probable cause.

As for Mr. Brown, Plaintiffs again assert that he did not refuse an order (Doc. 31, p.5).  More specifically, they allege that Mr. Brown had no time to respond to Officer Rackard's command that "[Mr.] Brown . . . close the patrol car door and get away from the car" before the kerfuffle began that resulted in Mr. Brown's tasing (Doc. 19, p.5).  In the light most favorable to Plaintiffs, the allegation that Mr. Brown was given no time to respond to the officer's demand negates the requirement that there be some *actus reus*.  *See e.g., Francis v. State*, 736 So. 2d 97, 99 (Fla. 4th DCA 1999) (finding "physical conduct" is generally a requirement to support a conviction for resisting an officer).  In other words, Mr. Brown could not resist if he had no time to comply.

Mr. Brown's charge for battery on a law enforcement officer in violation of FLA. STAT. § 784.07 also lacks probable cause.  The facts as presented by Plaintiffs show that Officer Rackard grabbed Mr. Brown's arm and tried to throw him to the ground.  This action resulted in Officer Rackard slipping whereby Mr. Brown was pulled on top of Officer Rackard.  Mr. Brown alleges that he could not get off of Officer Rackard because Officer Rackard continued to tightly grip Mr. Brown by the front of his shirt.   Plaintiffs allege that Mr. Brown never battered the officers, and without substantial evidence to the contrary, this must be accepted as true.

The right to be free from arrest without probable cause is a clearly established right. "Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment."  *Durrithy v. Pastor*, 351 F.3d 1080,

1088 (11th Cir. 2003) (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)). Therefore, the third prong of the qualified immunity analysis with respect to the unlawful arrest claim has been satisfied and no further inquiry is necessary. Defendants are not entitled to qualified immunity on the unlawful arrest claims.

**Excessive Force**

Whether a constitutional violation occurred in an excessive force case arising out of an arrest is determined using an "objective reasonableness" standard. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (citations omitted). An excessive force claim "relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." *Hadley*, 526 F.3d at 1329 (citing *Bashir*, 445 F.3d at 1332). The Fourth Amendment's protection against unreasonable searches and seizures "'encompasses the plain right to be free from the use of excessive force in the course of an arrest.'" *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1244 (11th Cir. 2003) (quoting *Lee*, 284 F.3d at 1197). "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Galvez*, 552 F.3d at 1242-43 (quoting *Lee*, 284 F.3d at 1197).

The question presented here is whether, under Plaintiff's version of the facts, Defendants "behaved reasonably in the light of the circumstances before [them]." *McCormick*, 333 F.3d at 1244 (citing *Vinyard*, 311 F.3d at 1347). In order to determine whether the force used in a particular case was reasonable, courts must examine: 1) the need for the application of force; 2) the relationship between the need and the amount of

force used; and 3) the extent of the injury inflicted. *Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004). To be reasonable, "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee*, 284 F.3d 1198. However, "[u]se of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Vinyard*, 311 F.3d at 1347.

For situations involving tasers, the Eleventh Circuit has found that in a "difficult, tense and uncertain situation the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force." *Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008).

Considering the severity of the crimes, the danger Plaintiff posed to the officers, and the risk of flight by the Plaintiffs (the three factors identified by the Supreme Court in *Graham v. Conner*, 490 U.S. 386 (1989) and restated by the Eleventh Circuit in *Lee* and *Galvez*), I find that the crime with which Ms. Works was charged (resisting an officer without violence) was not severe. I also find that the crimes with which Mr. Brown were charged (resisting an officer with violence and battery of a law enforcement officer) are severe. However, under Plaintiffs' version of the facts, neither Ms. Works nor Mr. Brown were resisting the officers, and the alleged battery was the result of Officer Rackard's slipping and pulling Mr. Brown down to the ground. Thus danger to Defendants is questionable and there was no risk of flight. Again, for the purposes of summary judgment, I must accept Plaintiffs' version of the facts as true. *See McCormick*,

333 F.3d at 1244 n.14 ("We have repeatedly said that 'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" (quoting *Lee*, 284 F.3d at 1190)).  I find that under the Plaintiffs' version of the facts, the acts of leg-sweeping Ms. Works and forcibly throwing her to the ground when she had submitted peaceably to arrest in a nonthreatening way and knocking Mr. Brown to the ground without giving him the opportunity to submit and tasing him while he was being held in place by Officer Rackard were disproportionate to the need for that force, in violation of their constitutional rights.  *Cf. Buckley v. Haddock*, 292 Fed. Appx. 791, 792 (11th Cir. 2008) (unpublished) (where suspect actively but not violently acted to frustrate officer's attempts at arrest and suspect had been warned of taser use).

Defendants' contend that the force used on Ms. Works was *de minimus*. "Application of *de minimis* force, without more, will not support a claim for excessive force."  *AFL-CIO v. City of Miami*, 2011 U.S. App. LEXIS 6825 (11th Cir. 2011). Defendants cite two cases to support their proposition.  In *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000), the suspect who was thrown against a van and kneed in the back by police officers was suspected of being in a physical altercation.  *Id.* at 1254.  In *Metcalf v. City of Tallahassee Police Dep't*, 2001 U.S. Dist. LEXIS 21695, *18 (N.D. Fla. Apr. 20, 2001), the suspect who was shoved to the ground and had knee put in his back was suspected of being in a domestic disturbance and had been carrying a firearm at the time police arrived.  Here, Ms. Works was not the subject of the investigation, was not suspected of being in a physical altercation, and was not carrying a firearm.  Rather, Plaintiffs paint Ms. Works as merely a concerned mother and property owner.  This case

is clearly distinguishable. Kicking Ms. Works to the ground after she had offered her hands for arrest was excessive.

**Clearly Established Law**

The final inquiry in the qualified immunity analysis for the excessive force claim is whether the constitutional right violated was clearly established. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In determining whether a right is clearly established, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "For a right to be 'clearly established,' previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). "Thus, 'fair and clear notice to government officials is the cornerstone of qualified immunity.'" *Bashir*, 445 F.3d at 1331 (quoting *Vinyard*, 311 F.3d at 1350). I must judge Defendants' conduct "from the perspective of a reasonable officer on the scene, rather than through the lens of hindsight . . ." *Kesinger ex rel. Kesinger v. Herrington*, 381 F.3d 1243, 1249 (11th Cir. 2004). As discussed above, under Plaintiffs' version of the facts, both Ms. Works and Mr. Brown were compliant and non-violent arrestees.

It is well established in the Eleventh Circuit that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force. *Hadley*, 526 F.3d at 1330 (citing *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002)). This principle has been well established since at least 2002. *Hadley*, 526 F.3d at 1333.

Here, Ms. Works and Mr. Brown were unarmed, nonthreatening, and in the presence of two armed officers. The only thing Ms. Works did was refuse to go inside her home. She even offered her hands to the officers to be cuffed. Similarly, Mr. Brown was standing at the police car door and given no time to obey instructions before he was taken to the ground and tased.

The cases Defendants cite in support of their argument for qualified immunity are notably distinguishable from the instant case. In *Draper*, the arrestee was belligerent, loud, hostile, and profane. *Draper v. Reynolds*, 369 F. 3d 1270, 1273 (11th Cir. 2004). He gestured animatedly, and continuously paced. *Id.* Draper repeatedly yelled at the officer, and five times refused to obey the officer's command before he was tased one time by officers. *Id.* In *Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008), the arrestee repeatedly ignored police instructions and continued to act belligerently. These cases stand in complete contrast to Mr. Brown, who had no time to respond to the officer's command and there is no indication that Mr. Brown was acting out of control.

Because Plaintiffs offered no resistance and because Mr. Brown was given no time to comply with the officer's demands, it was clearly established at the time of the incident, that it was unreasonable to use the force that Defendants did. Defendants Rackard and Stevenson are not entitled to qualified immunity. As such, Defendant Haddock is also not entitled to summary judgment either.

**State Law Claims**

As to any remaining state law claims, I find that there are conflicts in the facts that a reasonable jury could resolve in favor of Plaintff. Consequently summary judgment is inappropriate for these claims.

## Conclusion

The Motions for Summary Judgment (Docs 25, 26, & 27) are **DENIED**.

**ORDERED** on May 2, 2011.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**
